# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICKY D. HALE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-15-113-SPS |

## OPINION AND ORDER

The claimant Ricky D. Hale requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 9, 1979, and was thirty-four years old at the time of the administrative hearing (Tr. 31). He completed the eighth grade, and has worked as a mechanic helper and tire repairer (Tr. 21, 131). The claimant alleges he has been unable to work since an amended onset date of May 16, 2012, due to his weight, feet, back, hernia, headaches, and hands that swell (Tr. 130).

## Procedural History

On August 24, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Doug Gabbard II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 22, 2013 (Tr. 9-23). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 416.967(b), except that he could perform unskilled work, defined as little or no judgment to do simple duties that can be learned on the job in a short period of time, and that he could not be required to carry out detailed instructions or perform job skills requiring a GED or reasoning level greater than 1. Additionally, the ALJ

determined that the claimant's supervision needed to be direct, simple, and concrete; he could only concentrate on simple, repetitive tasks for no longer than two hours, and would then need a break; his interpersonal contact with supervisors and co-workers should be incidental to work performed like assembly work, but he could not work at assembly line or production line speeds; and he could have no contact with the general public. Furthermore, the ALJ found that the claimant could only occasionally climb and could not balance, stoop, kneel, or crouch. Finally, the ALJ found the claimant must be allowed to alternately sit and stand every forty-five to sixty minutes throughout the workday in order to change positions without leaving the workstation (Tr. 15-16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, garment bagger and final assembler (Tr. 21-23).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly assess his RFC, and (ii) by finding there were other jobs the claimant could perform. Specifically as to the first argument, the claimant asserts that the ALJ erred by failing to obtain Medical Source Statements from his consultative examiners, in evaluating a treating physician opinion, by failing to find he had additional severe impairments and further failing to account for them in his RFC, and by improperly finding him not credible  The Court agrees that the ALJ failed to properly assess *all* the claimant's impairments at step four, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairments of obesity, genu valgus in both knees, depression, and amphetamine dependence (in remission), along with the nonsevere impairments of diabetes with neuropathy, chest pain, shortness of breath, umbilical hernia, flat feet, gastroesophageal reflux disease (GERD), hyperlipidemia, an abscess, upper respiratory infection, and chronic back pain (Tr. 11). The record reflects that the claimant's weight was consistently well over 400 pounds, and treatment records relevant to the claimant's physical impairments reflect that he largely received treatment at Spiro Family Medical for diabetes mellitus, umbilical hernia, chest pain, abdominal pain, shortness of breath, obesity, hyperlipidemia, and GERD (Tr. 237). A June 16, 2012 note reflects that the claimant's diabetes was managed with medication, and an infection related to the hernia was improving (Tr. 246). The claimant also reported shortness of breath upon exertion (Tr. 255). In January 2013, the claimant complained of foot pain, which the doctor related to his weight and recommended weight loss (Tr. 266). Upon exam that day, his umbilicus was oozing and herniated, and his feet and ankles were tender (Tr. 266). On August 6, 2013, the claimant's umbilical hernia was still inflamed and notes reflect he needed a surgical consult but was considered a poor candidate and at risk for complications for the wound to heal (Tr. 271).

On January 16, 2012, Dr. Wojciech L. Dulowski completed a consultative exam. He noted that the claimant's weight was 464 pounds without shoes, that he walked slowly but had good safety and stability, and that he had difficulty walking on tiptoes and heels because of weight (Tr. 184). He noted the claimant's abdomen was obese and that he had an umbilical hernia (Tr. 184). Additionally, he noted the claimant had 5/5 grip strength

with good gross and fine manipulation (Tr. 184).  He indicated that the claimant had full range of motion but had pain on range of motion of the lumbosacral spine (Tr. 183).  He assessed the claimant with morbid obesity, chronic back pain, genu valgus, and flat feet (Tr. 185).

On March 9, 2012, state reviewing physician Dr. Karl Boatmen found the claimant could perform light work with no manipulative or postural limitations (Tr. 230).

On September 23, 2013, Dr. Robert Williams, one of the physicians from Spiro Family Medical, completed a physical Medical Source Statement (MSS), indicating that the claimant could lift/carry twenty pounds frequently and occasionally, due to his obesity, low back pain, and large umbilical hernia (Tr. 273).  Additionally, he indicated that the claimant could stand/walk less than two hours in an eight-hour workday, and sit less than six hours in an eight-hour workday but that he must also periodically alternate sitting and standing (Tr. 273-274).  He indicated no pushing/pulling or manipulative limitations, but noted that the claimant could never climb, kneel, crouch, or crawl, and only occasionally balance (Tr. 274-275).  He attributed these postural limitations to the claimant's morbid obesity with very poor physical endurance (Tr. 274).  Finally, he indicated that the claimant was limited in relation to temperature extremes, hazards, fumes, odors, chemicals and gases, but unlimited with regard to noise, dust, vibration, and humidity/wetness (Tr. 275).  In explanation, he stated that the claimant's obesity impaired the ability to tolerate temperature extremes and that fumes would affect his breathing (Tr. 275).

In his written opinion, the ALJ noted and discussed each of the claimant's nonsevere impairments at step two, providing reasons for why he determined them to be nonsevere (Tr. 11-14). At step four, he then stated that he "has accounted for the claimant's obesity, genu valgus in both knees, depression, and amphetamine dependence (in remission) in the physical and mental restrictions contained in his [RFC]," *i. e.*, his severe impairments, but did not mention the multiple nonsevere impairments at this step (Tr. 17). The ALJ did discuss the medical evidence related to each of the claimant's severe impairments in turn, then determined that the claimant was not credible because: (i) he received unemployment compensation after the alleged onset date, (ii) he had a sporadic work history, and (iii) he stopped working due to a layoff rather than his impairments (Tr. 19). The ALJ gave great weight to Dr. Dulowski's opinion and some weight to the state reviewing physician opinions, finding it was consistent with the RFC. As to Dr. Williams's opinion, the ALJ gave it "little weight" because he only examined the claimant twice, he found the claimant's gait to be normal, his opinion was inconsistent with Dr. Dulowski's finding the claimant had a full range of motion, and it was inconsistent with the claimant's lack of treatment records.

The claimant asserts that the ALJ erred in formulating his RFC, and the Court agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to

controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record as to the claimant's limitations, particularly related to standing and walking. Here, the ALJ found that Dr. Williams's opinion was inconsistent with treatment notes and Dr. Dulowski's findings, because he stated the claimant's gait was normal and Dr. Dulowski found he had a full range of motion. However, Dr. Dulowski also noted that the claimant's walk was safe and stable but slow and that his

obesity affected his ability to heel/toe walk, and that he had pain with range of motion of the lumbosacral spine. Additionally, he credited Dr. Dulowski's one-time exam over Dr. Williams's two exams finding Dr. Williams's opinion lacked a longitudinal picture. These discrepancies indicate the ALJ engaged in improper picking and choosing in order to avoid giving credence to Dr. Williams's opinion. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).

Furthermore, as this Court and the Tenth Circuit have repeatedly stated, once the ALJ determined that the claimant had *any* severe impairment, any failure to find additional severe impairments will not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Nevertheless, the ALJ *is required* consider the effects of all the impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four, which he did not do. Specifically, the ALJ overtly failed to account for the claimant's nonsevere impairments in assessing his RFC. Additionally,

the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC. Both of these errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). For example, the ALJ refused to discuss, much less impose any limitations related to, the claimant's neuropathy, shortness of breath, and umbilical hernia at step four because he had determined they were nonsevere impairments. He should *at least* have discussed the impact of the claimant's nonsevere impairments, *including* these three, on the claimant's severe impairments. This is particularly important when there is repeated evidence that the claimant's documented struggles with shortness of breath upon exertion, as well as a repeatedly inflamed and oozing hernia, could be affected by multiple impairments, including the claimant's severe impairment of obesity.

Indeed, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another

the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing her RFC. Both of these errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). For example, the ALJ refused to discuss, much less impose any limitations related to, the claimant's neuropathy, shortness of breath, and umbilical hernia at step four because he had determined they were nonsevere impairments. He should *at least* have discussed the impact of the claimant's nonsevere impairments, *including* these three, on the claimant's severe impairments. This is particularly important when there is repeated evidence that the claimant's documented struggles with shortness of breath upon exertion, as well as a repeatedly inflamed and oozing hernia, could be affected by multiple impairments, including the claimant's severe impairment of obesity.

Indeed, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another

impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.* Although the ALJ stated at step four that he considered the claimant's obesity as required by Soc. Sec. Rul. 02-01p, he failed to explain *how* the claimant's obesity and co-existing impairments actually affected the RFC. Because the ALJ stated at step four he did not take into account the claimant's nonsevere impairments, the Court thus cannot conclude that he properly applied Soc. Sec. Rul. 02-01p in this case. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *1, *5-*6, *7. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of

[DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *6.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**